United States District Court
Eastern District of Michigan
Southern Division

Ali Majid Hassan, et al.,

Plaintiffs,

v.

Lisa A. Johnson, Ambassador, U.S. Embassy, Beirut, et al.,

Defendants.

Civil No. 25-12762

Honorable Mark A. Goldsmith
Mag. Judge David R. Grand

---

# Defendants' Motion to Dismiss

---

Defendants, by their attorneys, Jerome F. Gorgon Jr., United States Attorney for the Eastern District of Michigan, and Brittany D. Parling, Assistant United States Attorney, move to dismiss this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The grounds for this motion are set forth in the attached brief.

Under Local Rule 7.1(a), the undersigned counsel certifies that on November 19, 2026, counsel communicated in writing with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; as of November 20, 2026, opposing counsel has not expressly agreed to the relief, orally or in writing.

Respectfully Submitted,

**Jerome F. Gorgon Jr.**
United States Attorney

*/s/ Brittany D. Parling*
Brittany D. Parling (P78870)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9746
Brittany.Parling@usdoj.gov

Dated: November 20, 2026

United States District Court
Eastern District of Michigan
Southern Division

Ali Majid Hassan, et al.,

Plaintiffs,

v.

Lisa A. Johnson, Ambassador, U.S. Embassy, Beirut, et al.,

Defendants.

Civil No. 25-12762

Honorable Mark A. Goldsmith
Mag. Judge David R. Grand

---

# Brief in Support of Defendants' Motion to Dismiss

---

## ISSUES PRESENTED

I. Does the Court lack subject matter jurisdiction because the visa application at issue has been re-adjudicated and refused?

II. Should the Court dismiss Plaintiffs' APA claims because the State Department has no duty to re-adjudicate the visa application, and because Plaintiffs fail to allege unreasonable delay in any event?

III. Should the Court dismiss Plaintiffs' claim for a writ of mandamus for lack of subject matter jurisdiction?

# TABLE OF CONTENTS


INDEX OF AUTHORITIES ........................................................................ iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ......................... vii

INTRODUCTION ........................................................................................1

BACKGROUND ..........................................................................................2

I. Statutory and regulatory background ..................................................2

II. Factual and procedural background.....................................................3

LEGAL STANDARDS ..................................................................................5

ARGUMENT ...............................................................................................6

I. This Court lacks subject matter jurisdiction because a consular officer adjudicated and refused Hassan's visa application. .......................................6

II. Plaintiffs fail to state a claim under the Administrative Procedure Act. .......10

A. Hassan's visa application has been refused, and the State Department has no duty to further process or re-adjudicate it. ..................................11

B. In any event, Plaintiffs fail to allege facts sufficient to state a plausible claim for unreasonable delay under the *TRAC* factors. ............................12

III. The Court lacks subject matter jurisdiction over Plaintiffs' mandamus claim.............................................................................................19

CONCLUSION .............................................................................................20

CERTIFICATION OF SERVICE....................................................................21

## INDEX OF AUTHORITIES

### Cases

*Ahmed v. Blinken*, No. 23-11860, 2024 WL 4172525 (E.D. Mich. Sept. 12, 2024) .......... 12, 15, 16, 17, 18

*Al Awbathani v. United States Dep't of State*, No. 24-11838, 2025 WL 2679960 (E.D. Mich. Sept. 18, 2025) .......... 15

*Aljabari v. Mayorkas*, No. 21-CV-6645, 2022 WL 2073047 (N.D. Ill. June 9, 2022) .......... 18

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980) .......... 19

*Arab v. Blinken*, 600 F. Supp. 3d 59 (D.D.C. 2022) .......... 14

*Ariani v. Rubio*, No. 25-CV-349 (TSC), 2025 WL 3653503 (D.D.C. Dec. 17, 2025) .......... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 6

*Awada v. Assistant Sec'y For Consular Affs., U.S. Dep't of State*, No. 3:24 CV 1803, 2025 WL 2371893 (N.D. Ohio Aug. 14, 2025) .......... 9

*Baaghil v. Miller*, 1 F.4th 427 (6th Cir. 2021) .......... 10

*Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430 (6th Cir. 2022) .......... 12

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) .......... 5, 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 6

*Carson v. U.S. Office of Special Counsel*, 633 F.3d 487 (6th Cir. 2011) .......... 19

*Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330 (D.C. Cir. 2023) .......... 15

*Dastagir v. Blinken*, 557 F. Supp. 3d 160 (D.D.C. 2021) .......... 16

*Delavari v. Rubio*, No. 25-11524, 2026 WL 710965 (E.D. Mich. Mar. 13, 2026) .......... 9

*Demis v. Sniezek*, 558 F.3d 508 (6th Cir. 2009) .......... 7

*Derwish v. Deputy Chief of Mission, U.S. Embassy in Djibouti*, No. 1:24-CV-709, 2025 WL 2372081 (S.D. Ohio Aug. 15, 2025) .......... 8

*Dmitrenko v. Chertoff*, No. 1:07 CV 82, 2007 WL 1303009 (E.D. Va. Apr. 30, 2007) .......... 18

*Fawaz v. Blinken*, No. 24-11314, 2024 WL 5711344

(E.D. Mich. Nov. 15, 2024)....................................................................10

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007)....5

*Heckler v. Ringer*, 466 U.S. 602 (1984) ....................................................19

*Hussein v. Beecroft*, 782 F. App'x 437 (6th Cir. 2019)...................................10

*In re Barr Labs., Inc.*, 930 F.2d 72 (D.C. Cir. 1991).......................................17

*In re Core Comm'cns, Inc.*, 531 F.3d 849 (D.C. Cir. 2008).................................13

*Iqbal v. Blinken*, No. 2:23-cv-01299-KJM-CSK, 2024 WL 3904959
(E.D. Cal. Aug. 22, 2024)....................................................................11

*Isse v. Whitman*, No. CV 22-3114 (BAH), 2023 WL 4174357
(D.D.C. June 26, 2023).......................................................................15

*Janay v. Blinken*, 743 F. Supp. 3d 96 (D.D.C. 2024) .......................................14

*Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024)......8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................6

*Maczko v. Joyce*, 814 F.2d 308 (6th Cir. 1987) .............................................19

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094
(D.C. Cir. 2003)..............................................................................17

*Masih v. Rubio*, No. 25-10987, 2026 WL 483595 (E.D. Mich. Feb. 20, 2026)........9

*Milligan v. Pompeo*, 502 F. Supp. 3d 302 (D.D.C. 2020) .............................. 15, 16

*Mohafel v. Rubio*, No. 25-CV-11061, 2025 WL 3284461
(E.D. Mich. Nov. 25, 2025).....................................................................9

*Mohammad v. Blinken*, 548 F. Supp. 3d 159 (D.D.C. 2021).......................... 13, 16

*Nikolao v. Lyon*, 238 F. Supp. 3d 964 (E.D. Mich.), *aff'd in part, vacated in part*,
875 F.3d 310 (6th Cir. 2017) ..................................................................6

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) .....................................11

*Palakuru v. Renaud*, 521 F. Supp. 3d 46 (D.D.C. 2021) ................................ 12, 17

*Powell v. McCormack*, 395 U.S. 486 (1969) ..................................................7

*Rahimian v. Blinken*, No. CV 22-785 (BAH), 2023 WL 143644
(D.D.C. Jan. 10, 2023)................................................................... 14, 15

*Sankari v. U.S. Dep't of State*, No. 2:24-cv-12975, 2025 WL 1550231
(E.D. Mich. May 30, 2025) ...............................................................8, 9

*Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018 (D.D.C. June 10, 2020)....................14

*Siddiqui v. Blinken*, 646 F. Supp. 3d 69 (D.D.C. 2022) ....................15

*Skalka v. Kelly*, 246 F. Supp. 3d 147 (D.D.C. 2017).................... 13, 17

*Stone v. Blinken*, No. 2:23-CV-12181, 2024 WL 3556183 (E.D. Mich. July 26, 2024)....................14

*Sumpter v. Wayne Cnty.*, 868 F.3d 473 (6th Cir. 2017)....................7

*Tate v. Pompeo*, 513 F. Supp. 3d 132 (D.D.C. 2021)....................17

*Taylor v. KeyCorp*, 680 F.3d 609 (6th Cir. 2012) ....................5

*Telecomms. Rsch. & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).................... 12, 13, 15, 16, 19

*Telukunta v. Mayorkas*, No. 2:21-CV-10372, 2021 WL 2434128 (E.D. Mich. June 15, 2021) .................... 12, 14, 20

*Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1 (D.D.C. 2021).................... 14, 17

*Yafai v. U.S. Dep't of State*, No. 23-13199, 2024 WL 2806948 (E.D. Mich. May 31, 2024) .................... 12, 17

*Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87 (D.D.C. 2024)....................9

*Yaldo v. U.S. Dep't of State*, No. 25-13323, 2026 WL 1468275 (E.D. Mich. May 26, 2026) ....................9

*Yared v. Nepal*, No. 1:24 CV 2114, 2025 WL 1067738 (N.D. Ohio Apr. 9, 2025) ....................8

*Zaman v. U.S. Dep't of Homeland Sec.*, No. CV 19-3592 (ABJ), 2021 WL 5356284 (D.D.C. Nov. 16, 2021)....................15

**Statutes**

5 U.S.C. § 555(b) ....................11

5 U.S.C. § 706(1) ....................4, 11

8 U.S.C. § 1154(a)(1)(A)(i) ....................2

8 U.S.C. § 1154(b) ....................2

8 U.S.C. § 1181....................2

8 U.S.C. § 1182....................3

8 U.S.C. § 1182(a)(4) .......... 4, 10
8 U.S.C. § 1201 .......... 2
8 U.S.C. § 1201(g) .......... 2, 3, 4, 7, 8, 9
8 U.S.C. § 1202 .......... 2
8 U.S.C. § 1361 .......... 2
8 U.S.C. § 1571(b) .......... 13, 14
8 U.S.C. §§ 1153(a)(1)–(4) .......... 2
28 U.S.C. § 1361 .......... 4, 19

**Other Authorities**

U.S. Const. art. III, § 2 .......... 6
U.S. Dep't of State, *Administrative Processing Information* .......... 3

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 5, 10
Fed. R. Civ. P. 12(b)(6) .......... 5, 10, 11
Fed. R. Civ. P. 12(h)(3) .......... 5
Fed. R. Evid. 201(b)(2) .......... 11

**Regulations**

22 C.F.R. § 40.1(l)(2) .......... 2
22 C.F.R. § 42.81(a) .......... 2, 3, 7, 11

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004)

*Baaghil v. Miller*, 1 F.4th 427 (6th Cir. 2021)

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)

## INTRODUCTION

Plaintiffs bring this action alleging that the U.S. Department of State has unreasonably delayed the adjudication of Plaintiff Ali Majid Hassan's immigrant visa application. Plaintiffs seek an order compelling the State Department to adjudicate the visa application. But a consular officer refused Hassan's visa application at the conclusion of his visa interview in July 2024 under 8 U.S.C. § 1201(g). And in November 2026, a consular officer re-adjudicated and again refused Hassan's application under 8 U.S.C. § 1182(a)(4). There was no duty requiring the State Department to re-adjudicate the visa application, and there is no duty for the State Department to re-adjudicate the application yet again. Because Plaintiffs have now received the relief requested—re-adjudication of the visa application—their claims are moot and this Court lacks jurisdiction.

Plaintiffs also fail to state a claim under the Administrative Procedure Act because they have not identified a mandatory legal duty that a consular officer is required to take. Regardless, Plaintiffs do not plausibly allege that any purported delay in re-adjudicating the visa application—at most, approximately 29 months since Hassan's July 2024 visa interview—is unreasonable as a matter of law. The Court also lacks subject matter jurisdiction over Plaintiffs' mandamus claim. Accordingly, the Court should dismiss Plaintiffs' complaint.

## BACKGROUND

### I. Statutory and regulatory background

To enter and permanently reside in the United States, a noncitizen must possess a valid immigrant visa. 8 U.S.C. § 1181. To obtain a family-sponsored immigrant visa, a United States citizen or lawful permanent resident must file a Form I-130 Petition for Alien Relative with United States Citizenship and Immigration Services (USCIS) to classify the intended beneficiary under one of the family-based categories established by the Immigration and Nationality Act (INA). *See* 8 U.S.C. §§ 1153(a)(1)–(4), 1154(a)(1)(A)(i). When USCIS approves the petition, the agency forwards a copy to the Department of State, which is responsible for adjudicating applications for immigrant visas at U.S. embassies and consulates abroad. 8 U.S.C. §§ 1154(b), 1201, 1202.

A visa application is executed when an applicant appears before a consular officer for a consular interview. 22 C.F.R. § 40.1(l)(2). Upon execution of a proper visa application, the consular officer adjudicating the application must either issue or refuse the visa. 22 C.F.R. § 42.81(a). The applicant bears the burden of establishing their eligibility for the visa sought to the satisfaction of the consular officer. 8 U.S.C. § 1361. A consular officer cannot issue a visa if the officer "knows or has reason to believe" that the noncitizen "is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law." 8 U.S.C.

§ 1201(g). 8 U.S.C. §§ 1182 and 1201(g) provide independent, lawful grounds for refusal of a visa application. *See* 22 C.F.R. § 42.81(a).

Because a refusal under 8 U.S.C. § 1201(g) is based on the applicant's failure to demonstrate eligibility for a visa, consular officers often afford noncitizens who have been refused under § 1201(g) additional discretionary administrative processing, which may generate evidence that would cause the consular officer to reopen the visa case and reconsider the refusal. *See* U.S. Dep't of State, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Nov. 20, 2026). Importantly, there is no statutory or regulatory command that a consular officer engage in additional post-refusal administrative processing to allow applicants to demonstrate eligibility for a visa.

## II. Factual and procedural background

Plaintiff Zahra Ali Hojeij, a U.S. citizen, alleges that she sought an immigrant visa on behalf of her spouse, Ali Majid Hassan, a citizen of Lebanon. (Compl. ¶¶ 5–6, ECF No. 1, PageID.3–4.) USCIS approved Hojeij's I-130 petition in 2013. (*Id.* ¶ 20, PageID.8.) Hassan applied for an immigrant visa in 2014, but a consular officer determined that he was subject to a ten-year inadmissibility bar based on his unlawful presence in the United States. (*Id.* ¶¶ 18, 22, PageID.8–9.) Hassan applied for a waiver of inadmissibility for his unlawful presence as well as

his conviction for a crime involving moral turpitude, which USCIS denied. (*Id.* ¶¶ 18, 22–29, PageID.8–10.) After waiting the required ten-year period, Hassan again applied for an immigrant visa. (*Id.* ¶ 30, PageID.10.)

Plaintiffs allege that Hassan appeared for an interview at the U.S. Embassy in Beirut, Lebanon, on July 30, 2024, and that his visa application has not been adjudicated. (*Id.* ¶¶ 31–35, PageID.10–12.) Plaintiffs concede, however, that the State Department's website reflects that Hassan's visa application has been "refused." (*Id.* ¶ 33, PageID.11; *see also* ECF No. 1-10, PageID.98.)

Plaintiffs filed this lawsuit in September 2025. (Compl., ECF No. 1.) They seek an order compelling Defendants to adjudicate Hassan's visa application under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act (APA), 5 U.S.C. § 706(1). (*Id.* ¶¶ 38–58, PageID.12–17.)

The State Department's records reflect that Hassan appeared for an interview at the U.S. Embassy in Beirut, Lebanon, and executed an application for an immigrant visa on July 30, 2024. (Exhibit 1 – Declaration of Samuel W. McDonald, ¶ 6.) A consular officer refused Hassan's visa application under 8 U.S.C. § 1201(g). (*Id.*) The State Department's records further reflect that Hassan was re-interviewed by a consular officer on November 6, 2026. (*Id.*, ¶ 9.) The consular officer re-adjudicated and refused Hassan's visa application under section 212(a)(4) of the INA, 8 U.S.C. § 1182(a)(4). (*Id.*, ¶ 9).

## LEGAL STANDARDS

Rule 12(b)(1) permits dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions generally come in two varieties: facial attacks and factual attacks. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading." *Id.* The court accepts the complaint's allegations as true and evaluates whether they establish federal jurisdiction. *Id.* Where a motion brings a factual attack, the court "must weigh the conflicting evidence" to determine whether subject matter jurisdiction exists. *Id.* The court has "wide discretion" to consider documents outside the pleadings. *Id.* The plaintiff bears the burden of establishing subject matter jurisdiction. *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion under Rule 12(b)(6), courts construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as

they are referred to in the Complaint and are central to the claims contained therein." *Id.* The court may also "take judicial notice of [p]ublic records and government documents available from reliable sources on the internet, such as websites run by governmental agencies." *Nikolao v. Lyon*, 238 F. Supp. 3d 964, 977 n.2 (E.D. Mich.), *aff'd in part, vacated in part*, 875 F.3d 310 (6th Cir. 2017) (internal quotation marks omitted). To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I. This Court lacks subject matter jurisdiction because a consular officer re-adjudicated and refused Hassan's visa application.

This Court lacks subject matter jurisdiction because Plaintiffs lack standing, or, alternatively, their claims are moot. The Constitution limits federal jurisdiction to cases and controversies. U.S. Const. art. III, § 2. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must have suffered an injury-in-fact that is fairly traceable to the defendant's challenged action and likely to be redressed by a favorable decision. *Id.* at 560–61. The plaintiff bears the burden of demonstrating standing. *Id.* at 561.

A case is moot "when the issues presented are no longer 'live' or the parties

lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 497 (1969). "Because the exercise of judicial power under Article III of the Constitution depends on the existence of a live case or controversy, mootness is a jurisdictional question." *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009).

Although the doctrines of standing and mootness are similar, "[s]tanding seeks to ensure the plaintiff has a personal stake in the outcome of the controversy at the outset of litigation," whereas mootness "is akin to saying that, although an actual case or controversy once existed, changed circumstances have intervened to destroy standing." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017) (internal quotation marks omitted). In other words, "standing applies at the sound of the starting gun, and mootness picks up the baton from there." *Id.*

Here, Plaintiffs lack standing because there was no case or controversy when they filed their complaint. Hassan's visa application was refused under 8 U.S.C. § 1201(g) on July 30, 2024. (Exhibit 1 – Declaration of Samuel W. McDonald, ¶ 6.) That refusal satisfied the consular officer's duty to "either issue or refuse the visa" after execution of the application. *See* 22 C.F.R. § 42.81(a).

Although Hassan's visa application was re-adjudicated and refused on November 6, 2026, the State Department was under no duty to further process or re-adjudicate the already-refused visa application. The D.C. Circuit has held that the government does not have a legal duty to further process or re-adjudicate a visa

application once it has been refused under 8 U.S.C. § 1201(g). *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024). The court also concluded that "[n]othing in federal law speaks to the ability of a consul," after making the decision to refuse a visa, "to hold onto the application in case circumstances later change in the applicant's favor." *Id.* at *4. "Unless and until that happens," the court explained, "the visa application remains officially refused." *Id.* at *2.

Several other courts have reached the same conclusion. *See, e.g.*, *Ariani v. Rubio*, No. 25-CV-349 (TSC), 2025 WL 3653503, at *4 (D.D.C. Dec. 17, 2025) (noting that "even if a consular officer places an executed application into administrative processing after refusing it, the officer has still issued a 'formal' and 'official refusal' that discharges any duty to act"); *Derwish v. Deputy Chief of Mission, U.S. Embassy in Djibouti*, No. 1:24-CV-709, 2025 WL 2372081, at *6 (S.D. Ohio Aug. 15, 2025) (holding that plaintiff failed to identify "a clear, mandatory, nondiscretionary duty that requires the government to adjudicate a visa application that a consular officer has already refused"); *Sankari v. U.S. Dep't of State*, No. 2:24-cv-12975, 2025 WL 1550231, at *5–*8 (E.D. Mich. May 30, 2025) (holding that there is no clear duty for the government to conclude administrative processing once a visa application has been refused under § 1201(g)); *Yared v. Nepal*, No. 1:24 CV 2114, 2025 WL 1067738, at *4 (N.D. Ohio Apr. 9, 2025)

(noting that plaintiff "asks this Court to compel Defendants to further adjudicate her fiancé's refused visa application, but she points to no statute or regulation that requires that further adjudication"); *see also Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101–02 (D.D.C. 2024) (holding that no statute or regulation requires the State Department to complete "administrative processing" once it has already refused a visa).

Because Hassan's visa application was adjudicated in July 2024, there was no case or controversy when Plaintiffs filed this action in September 2025. Other courts have held that plaintiffs lacked standing where the visa application was refused and there was no further duty to complete administrative processing. *See, e.g.*, *Yaldo v. U.S. Dep't of State*, No. 25-13323, 2026 WL 1468275, at *3 (E.D. Mich. May 26, 2026); *Delavari v. Rubio*, No. 25-11524, 2026 WL 710965, at *4 (E.D. Mich. Mar. 13, 2026); *Masih v. Rubio*, No. 25-10987, 2026 WL 483595, at *2 (E.D. Mich. Feb. 20, 2026); *Mohafel v. Rubio*, No. 25-CV-11061, 2025 WL 3284461, at *3 (E.D. Mich. Nov. 25, 2025); *Awada v. Assistant Sec'y for Consular Affs., U.S. Dep't of State*, No. 3:24 CV 1803, 2025 WL 2371893, at *7 (N.D. Ohio Aug. 14, 2025); *Sankari*, 2025 WL 1550231, at *5–*8.

Even if Plaintiffs dispute the initial refusal under 8 U.S.C. § 1201(g), their claims are now moot. On November 6, 2026—although it had no duty to do so—a consular officer re-adjudicated and again refused Hassan's visa application under 8

U.S.C. § 1182(a)(4). (Exhibit 1 – Declaration of Samuel W. McDonald, ¶ 9.) Thus, Plaintiffs have already received the relief they seek in this action—a decision on Hassan's visa application. Because Hassan's visa application has been re-adjudicated and refused, there is no remaining case or controversy.

Courts have regularly dismissed mandamus and APA actions as moot once a visa application has been adjudicated. *See, e.g.*, *Baaghil v. Miller*, 1 F.4th 427, 435 (6th Cir. 2021) ("As Ahmed received the relief he asked for—a ruling from the consulate—the district court correctly determined that his original claims are moot."); *Hussein v. Beecroft*, 782 F. App'x 437, 442 (6th Cir. 2019) (noting that plaintiffs' claims "became moot the moment the consular officer denied" their visa applications under § 1201(g)); *see also Fawaz v. Blinken*, No. 24-11314, 2024 WL 5711344, at *2 (E.D. Mich. Nov. 15, 2024) (dismissing plaintiffs' mandamus and APA claims as moot after visa applications were re-adjudicated and refused).

The refusal of Hassan's visa application satisfied the only duty set forth in federal law—the duty to issue or refuse the visa application. Plaintiffs cannot point to any further action required by Defendants. Accordingly, Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

## II. Plaintiffs fail to state a claim under the Administrative Procedure Act.

Even if the Court had subject matter jurisdiction, Plaintiffs' complaint should be dismissed under Rule 12(b)(6). The APA requires each agency to

"proceed to conclude a matter presented to it" within a "reasonable time," 5 U.S.C. § 555(b), and authorizes courts to compel agency action that has been "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). Here, a consular officer refused Hassan's visa application in July 2024 and refused it again in November 2026.[1] (Exhibit 1 – Declaration of Samuel W. McDonald, ¶¶ 6, 9.) No statute or regulation requires the State Department to further process or re-adjudicate the visa application. Regardless, Plaintiffs fail to allege unreasonable agency delay.

### A. Hassan's visa application has been refused, and the State Department has no duty to further process or re-adjudicate it.

To be entitled to relief under the APA, a plaintiff must show either that the agency unlawfully withheld action it was required to take, such as when an agency fails to meet a congressionally set deadline, or that the agency unreasonably delayed taking "a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). As discussed above, the refusals of Hassan's visa application satisfied any duty the consular officer had to issue or refuse the visa. *See* 22 C.F.R. § 42.81(a). Accordingly, Plaintiffs cannot identify a mandatory legal duty that a consular officer has failed to take. Because no law requires the State Department to further process or re-adjudicate Hassan's visa

[1] Courts have taken judicial notice of State Department records. *See, e.g.*, *Iqbal v. Blinken*, No. 2:23-cv-01299-KJM-CSK, 2024 WL 3904959, at *2 (E.D. Cal. Aug. 22, 2024). It is therefore proper for the Court to consider them under Rule 12(b)(6).

application, Plaintiffs fail to plausibly allege an APA claim.

### B. In any event, Plaintiffs fail to allege facts sufficient to state a plausible claim for unreasonable delay under the *TRAC* factors.

Plaintiffs' complaint also fails to allege unreasonable delay as a matter of law. To determine whether agency delay is unreasonable, the Sixth Circuit applies the six-factor test articulated by the D.C. Circuit in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022).

Courts properly consider the *TRAC* factors in evaluating unreasonable delay claims at the pleadings stage. *See, e.g.*, *Barrios Garcia*, 25 F.4th at 451; *Ahmed v. Blinken*, No. 23-11860, 2024 WL 4172525, at *3 (E.D. Mich. Sept. 12, 2024); *Yafai v. U.S. Dep't of State*, No. 23-13199, 2024 WL 2806948, at *4 (E.D. Mich. May 31, 2024); *Telukunta v. Mayorkas*, No. 2:21-CV-10372, 2021 WL 2434128, at *3 (E.D. Mich. June 15, 2021); *see also Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (noting that "the weight of authority" supports a *TRAC* factor analysis on a motion to dismiss). When doing so, "the court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Yafai*, 2024 WL 2806948, at *4. The *TRAC* factors weigh strongly in favor of the government here.

Here, Plaintiffs allege that Hassan appeared for a visa interview in July

2024—less than three years ago—and that he has not received a decision on his visa application. (Compl. ¶¶ 31–34, ECF No. 1, PageID.10–11.) Even accepting these allegations as true, they are insufficient to establish unreasonable delay under the *TRAC* factors.

**1. The first and second factors weigh in favor of Defendants.**

The "first and most important" factor is that "the time agencies take to make decisions must be governed by a 'rule of reason.'" *In re Core Comm'cns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). The second factor—whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed"—"may supply content for th[e] rule of reason." *TRAC*, 750 F.2d at 80. As a result, these two factors are typically considered together. *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 165 (D.D.C. 2021). Both favor the government here.

There is no statutory or regulatory timeframe within which the State Department must adjudicate, let alone re-adjudicate, visa applications. To the contrary, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). Plaintiffs cite 8 U.S.C. § 1571(b), which provides, "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."

(Compl. ¶ 42, ECF No. 1, PageID.13.) But this statute applies only to USCIS, not the State Department. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 115–16 (D.D.C. 2024) (noting that § 1571(b) does not apply to the State Department); *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (noting that "§ 1571(b) cannot here carry the weight that plaintiff would like it to shoulder"). Even if that provision did apply to the State Department, § 1571(b)'s "plain text lacks any compulsory language to interpret it as a legal requirement." *Telukunta*, 2021 WL 2434128, at *2; *see also Stone v. Blinken*, No. 2:23-CV-12181, 2024 WL 3556183, at *5 (E.D. Mich. July 26, 2024) (noting that "the plain language of the statute lacks mandatory language and therefore cannot be interpreted as a legal requirement"); *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 12 (D.D.C. 2021) (noting that "the timeline provided by § 1571 is 'aspirational, rather than mandatory'").

Because there is no firm timetable for adjudication, "courts typically turn to case law as a guide" to determine whether a delay is unreasonable. *See Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). In evaluating the reasonableness of a delay, courts consider the length of time since the "last government action." *Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022); *see also Rahimian v. Blinken*, No. CV 22-785 (BAH), 2023 WL 143644, at *6 n.6 (D.D.C. Jan. 10, 2023). Courts have generally found delays of three to five years not to be unreasonable. *See Al Awbathani v. United States Dep't of State*, No.

24-11838, 2025 WL 2679960, at *5 (E.D. Mich. Sept. 18, 2025); *Ahmed*, 2024 WL 4172525, at *5.

Here, Plaintiffs allege that Hassan appeared for a visa interview less than three years ago, in July 2024. Courts routinely conclude that delays significantly longer than this are not unreasonable as a matter of law. *See, e.g.*, *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 342 (D.C. Cir. 2023) (over four years); *Ahmed*, 2024 WL 4172525, at *5 (same); *Isse v. Whitman*, No. CV 22-3114 (BAH), 2023 WL 4174357, at *6 (D.D.C. June 26, 2023) (40 months); *Rahimian*, 2023 WL 143644, at *7 (41 months); *Zaman v. U.S. Dep't of Homeland Sec.*, No. CV 19-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (42 months); *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 76 (D.D.C. 2022) (three years).

In addition, although the State Department had no duty to further process Hassan's visa application after the refusal in July 2024, the agency's records reflect that a consular officer re-adjudicated and refused Hassan's visa application in November 2026. (Exhibit 1 – Declaration of Samuel W. McDonald, ¶ 9.) Accordingly, the first two factors favor Defendants.

**2. The third and fifth factors are neutral at best.**

The third and fifth factors "both consider the effects of delay." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). The third factor considers whether "human health and welfare are at stake." *TRAC*, 750 F.2d at 80. The fifth

factor considers "the nature and extent of the interests prejudiced by delay." *Id.*

Although Plaintiffs may have an interest in living together in the United States, these circumstances are not unique. Compelling re-adjudication of Hassan's case would simply benefit Plaintiffs, to the detriment of other similarly situated applicants and their families—who may be experiencing the same or worse impacts from a delay. *See also Mohammad*, 548 F. Supp. 3d at 168–69 (noting that "'many others' face similarly difficult circumstances as they await adjudication of their visa applications"). Compelling the government to re-adjudicate Hassan's visa application would also "direct[] resources away from the adjudications that the State Department has identified as more urgent." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 (D.D.C. 2021). Accordingly, these factors are neutral at best. *See Ahmed*, 2024 WL 4172525, at *7 (concluding that third and fifth factors did not "carry the day").

**3. The fourth factor favors Defendants.**

The fourth factor focuses on "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. This factor "carries the greatest weight in many cases." *Milligan*, 502 F. Supp. 3d at 319. The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net

gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).

Plaintiffs ask the Court to do just that: prioritize the re-adjudication of Hassan's visa application ahead of other applicants. This is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka*, 246 F. Supp. 3d at 154). Courts have consistently rejected similar requests. *See, e.g.*, *Ahmed*, 2024 WL 4172525, at *6 (concluding that fourth factor favored defendants where plaintiffs asked to move visa application "to the front of the line"); *Yafai*, 2024 WL 2806948, at *5 (finding that fourth factor favored government because "a judicial order putting a plaintiff's application at the head of the queue would move all others back one space and produce no net gain" (cleaned up)); *see also* *Palakuru*, 521 F. Supp. 3d at 52 ("Were the Court to compel the Government to act on Palakuru's petition, it would simply move him to 'the head of the queue' because he sued.").

In addition, granting Plaintiffs relief would interfere with the Department's discretionary authority to allocate agency resources and order its priorities. *See* *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) ("While the effect of an individual case would be minimal, an accumulation of such individual cases being

pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities."); *see also Ahmed*, 2024 WL 4172525, at *6 (observing that "courts have consistently rejected similar requests to reorder the government's competing priorities"). Compelling re-adjudication of Hassan's application over others would interfere with the conduct of foreign affairs because it would require the agency to re-order its priorities. *See Ahmed*, 2024 WL 4172525, at *6 (observing that "courts have consistently rejected similar requests to reorder the government's competing priorities").

Finally, allowing Hassan to gain priority simply because Plaintiffs have initiated litigation would "set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer. Such a situation hardly optimizes resources and serves only the individual at the detriment of the group." *Dmitrenko v. Chertoff*, No. 1:07 CV 82 JCC, 2007 WL 1303009, at *1 (E.D. Va. Apr. 30, 2007); *see Aljabari v. Mayorkas*, No. 21-CV-6645, 2022 WL 2073047, at *6 (N.D. Ill. June 9, 2022) ("The line is zero sum—any time spent on Aljabari's application can't be spent on other applications.").

As such, the fourth factor conclusively favors Defendants.

**4. The sixth factor is neutral.**

Finally, the sixth factor provides that "the court need not find any

impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal quotation marks omitted). Plaintiffs do not allege any impropriety or bad faith on the part of the State Department. As a result, this factor is neutral and does not favor Plaintiffs.

Because Plaintiffs fail to allege facts sufficient to state a plausible claim for unreasonable delay, their APA claims should be dismissed.

## III. The Court lacks subject matter jurisdiction over Plaintiffs' mandamus claim.

The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Jurisdiction "is inextricably bound with the merits of whether a writ of mandamus should issue." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). To be entitled to a writ of mandamus, a plaintiff must establish that (1) he has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available. *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (noting that the mandamus statute "provide[s] a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear

nondiscretionary duty”).

As discussed above, Plaintiffs fail to establish a clear nondiscretionary duty that Defendants have failed to perform. In addition, because the APA provides an adequate remedy for claims of unreasonable agency delay, mandamus jurisdiction does not lie. *See Telukunta*, 2021 WL 2434128, at *4 (dismissing mandamus petition for lack of jurisdiction where plaintiff “has an adequate remedy under the APA if she could establish an unreasonable delay, but she cannot”). Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs’ mandamus claim.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs’ complaint.

Respectfully Submitted,

**Jerome F. Gorgon Jr.**
United States Attorney

*/s/ Brittany D. Parling*
Brittany D. Parling (P78870)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9746
Brittany.Parling@usdoj.gov

Dated: November 20, 2026

## CERTIFICATION OF SERVICE

I certify that on November 20, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Brittany D. Parling*
Brittany D. Parling (P78870)
Assistant United States Attorney